Creen, J.
delivered the opinion of the court.
This is a controversy as to the priority of a lien, both the parties having a judgment against the same defendant. The Union Bank recovered its judgment at the March term of the Rutherford Circuit Court, 1841, and issued an execution tested of that term, which was levied on some personal property and upon the land in controversy, but which was returned “stayed by order of the plaintiff’s counsel.” An alias execution was issued the 13th July, returnable to the November term of the court, which execution was superseded, the defendant having obtained an order for a writ of error coram nobis and a superse-deas to stay the execution until the errors assigned should be disposed of by the court.
The said writ of error was depending until the July term, 1842, when the errors assigned were disallowed and the su-persedeas discharged.
In the meantime the judgment for the use of the Planters’ 'Bank had been recovered in the name of Simeon Marsh against *305 a portion of the same defendants and the land in question was sold by virtue thereof, and the Planters’ Bank became the purchaser.
After the writ of error coram nobis in the case of the Union Bank was disposed of, at the July term, 1842, a venditioni ex-ponas was issued from that term, commanding the sale of the property in controversy. To enjoin a sale of this property the Planters’ Bank files this bill.
The Planters’ Bank insists, that the Union Bank has lost its lien on this land given by the act of 1831, because it did not cause the land to be sold within twelve months after the rendition of its judgment, — not being prevented, as the plaintiff insists, by any of the causes mentioned in the act. The first section of the act of 1831, ch. 90, provides, “that all judgments obtained in any court of record in this State shall be a lien on the debtor’s land from the time said judgment was rendered; provided said judgment is rendered in the county where the debtor resides at the time of its rendition, and provided an execution is taken out upon said judgment, and said land sold .within twelve months after the rendition, unless the same is prevented by injunction or writ of error,-or appeal in the nature of a writ of error; in which case, if the judgment be affirmed or the injunction dissolved on motion, or the bill dismissed on its final hearing, it shall be incumbent on the creditor to issue his execution, and sell said land within one year from the time it was so affirmed, or said injunction was dissolved, or said bill dismissed.”
It is argued, that a supersedeas, by reason of a writ of error coram nobis, is not within the saving of this statute, constituting an excuse for not selling within the year, because the judgment in a writ of error coram nobis is that the writ of error be dismissed, and not that the judgment theretofore rendered in that writ be affirmed.
We do not think this a sound construction of the statute. The legislature intended that a party who might be prevented by process of law from effectuating his lien, by a sale of the land within the year, should have a year within which to sell, after the obstruction to his execution should be removed.
*306 One of the obstructions they enumerate is a writ of error. The general term is used, and includes in its meaning, a writ of error coram nobis, as well as a writ of error coram volis.
The expression in the statute, that the party shall sell within a year from the time the judgment shall be affirmed, is intended only to express the will of the legislature that he shall sell within a year after the legal obstruction created by the writ of error shall be removed. If it were a writ of error to a superior court and it were in that court dismissed, instead of the judgment being affirmed, it would be within the meaning of the statute. So here, the mere technical term which is used in disposing of the cause, being somewhat different from that-used in the statute, can make no difference.
Let the decree be affirmed.